IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

CARLOS GONZALEZ FIGUEROA, et
al.,

     **Plaintiff(s)**

       v.

J.C. PENNEY PUERTO RICO, INC.

     **Defendant**

**CIVIL NO.** 07-1258(JAG)

## OPINION AND ORDER

GARCIA-GREGORY, D.J.

    Pending before the Court is J.C. Penny's Motion for Summary Judgment. (Docket No. 75). For the reasons set forth below, said motion is hereby **GRANTED** in part and **DENIED** in part.

### PROCEDURAL BACKGROUND

    On March 27, 2007, Carlos L. Gonzalez Figueroa ("Plaintiff") filed a complaint against his employer J.C. Penney, Inc. ("Defendant or J.C. Penney"). He alleged, in essence, that Defendant had discriminated against him because of his age in violation of the Age Discrimination in Employment Act, 29 U.S.C. §621 *et seq.*, (ADEA) and the Puerto Rico anti-discrimination statute Law No. 100, P.R. Laws Ann. tit. 29 §146 ("Law 100"). He also alleged that Defendant retaliated against

Civil No. 07-1258 (JAG)                                                2

him in violation of ADEA's retaliation provision, 29 U.S.C. §623(d), and local Law No. 115, P.R. Laws Ann. tit. 29 §194a ("Law 115"). He further claims damages under Puerto Rico's general tort provision, Article 1802 of the Civil Code, 31 P.R. Laws Ann. tit. 31 §5141. Plaintiff's wife, Elsa I. Bermúdez Méndez, and their three children also filed suit against J.C. Penny.

Plaintiff was born on April 2, 1955. (Docket No. 75-2, J.C. Penny's Statement of Uncontested Facts ["JPSUF"], ¶1). He began working for Defendant's as a Dock Pick-Up Associate at the Plaza las Americas Store ("Plaza Store") on May 6, 1970. (Id., ¶2). Throughout the years he climbed the corporate ladder and in 1998 he was promoted to Senior Support Manager, a position that was converted in 2002 to that of Assistant Store Manager. (Id., ¶6, ¶10).

Plaintiff's 2001-2002 evaluation indicates that he was evaluated in five areas: shrinkage, improvement of profit, styling salon operation, store operation/customer service and credit applications. (Exhibit 30, Docket No. 75-37). Another section of J.C. Penney's evaluation measures competencies such as teamwork, innovation, integrity, costumer focus and problem solving. Plaintiff failed to meet the goals set regarding

Civil No. 07-1258 (JAG)                                                    3

shrinkage and improvement of profit. Id. He met the goals for the styling salon and credit applications. The evaluation for store operation/customer service indicated that improvements had been made but that many opportunities exist. Id. That evaluation also stated that, "Mr. Gonzalez is very knowledgeable of our store and a dedicated Penney Associate. Opportunities for 2002 consist in controlling short cash and work hard at improving our store standards". Id.

Plaintiff's 2002-2003 evaluation indicates that he was evaluated in shrinkage, short cash, test and check and personal development. (Exhibit 32, Docket No. 75-40). He failed to meet the shrinkage and the personal development goals, but his overall evaluation was that he fully met expectations and had a competent performance. Id.

A main point of contention in this case pertains to the exact nature of his responsibilities. Defendants posit that his role was limited to Loss Prevention and some duties regarding upkeep and maintenance. (Id., ¶14). He supervised new hires to the Loss Prevention department and monitored the money room, where the cash registers' daily balances are gathered and entered in the computer system. (Id., ¶15; Docket No. 82, Plaintiff's Statement of Uncontested Facts ("PSUF"), ¶16). Plaintiff, however, argues that in addition to those duties he

Civil No. 07-1258 (JAG)                                              4

was also in charge of receiving, part of the office, opening and
closing the store, customer service and distributing work to
associates. (PSUF, ¶14). As an Assistant Store Manager, he was
under the supervision of the Store Manager and was evaluated by
said manager and by the District Manager. (JPSUF, ¶17).

   According to J.C. Penney, the Plaintiff only had Loss
Prevention duties but was being paid the same as other Assistant
Store Managers that had more than one department to oversee.
(JPSUF, ¶29). Plaintiff, however, stated in his deposition that
he had other duties such as receiving, opening and closing the
store, customer service, money room, associate supervision,
supervision of the maintenance crew, etc. (Plaintiff's
deposition, Exhibit 31, Docket No. 75-38).

   In 2004, J.C. Penney Puerto Rico was transferred from the
company's International Division to the United States Division
2. (JPSUF, ¶30). As part of this transfer many changes took
place as the programs from the United States began to be
implemented. On February 2004, Mr. Daniel J. Ciccotelli arrived
in Puerto Rico to be the new Store Manager for the Plaza Store
and on May 2004, Mr. Richard Arenas arrived as the District Loss
Prevention Manager. (JPSUF, ¶36). Mr. Arenas was in charge,
among other things, of homogenizing the procedures in Puerto
Rico to those followed in the United States, among other things.

Civil No. 07-1258 (JAG)                                              5

(Arenas' Unsworn Statement, Exhibit 50, Docket No. 75-65). In February 2005, Ciccotelli became District Manager of the Puerto Rico division and Mr. Juan Leal became Plaza Store's manager. (JPSUF, ¶42).

During 2005, two of the three Assistant Store Manager positions were eliminated. (JPSUF, ¶44). J.C. Penney then offered Plaintiff two options. Either accept a separation package or accept a position as Senior Loss Prevention Manager. (Ciccotelli's deposition, Exhibit 42, Docket No. 75-54, p. 35). Another point of contention in this case has to do with the nature of the new position in relation to that of Assistant Store Manager. J.C. Penney avers that the new position corresponded to the correct classification for those members of management, like Plaintiff, whose main responsibilities were overseeing Loss Prevention matters. (JPSUF, ¶46). Plaintiff denies that a reclassification took place and posits that he was actually demoted because he performed several duties outside of Loss Prevention. (PSUF, ¶46).

Another Assistant Store Manager at the time, Mr. Burgos, was offered a severance package simultaneously with a promotion to Operations District Manager. (Ciccotelli's deposition, Exhibit 42, Docket No. 75-54, p. 32). The other Assistant Store

Civil No. 07-1258 (JAG)                                              6

Manager, Mrs. De Jesus, remained as the only manager in said
position.

Plaintiff started at the new position as Senior Loss
Prevention Manager, which had fewer responsibilities, a lower
pay band and less bonus eligibility than his previous position
as Assistant Store Manager. (JPSUF, ¶46). Plaintiff's employment
history shows that he earned up to $57,437 as Assistant Store
Manager including a 15% incentive. (Exhibit 1, Docket 75-3). As
a Senior Loss Prevention Manager he earned around $50,500
without incentive pay. Id.

Plaintiff's performance evaluation for 2005-2006 as Senior
Loss Prevention Manager had the same goals as the 2002-2003
evaluation: shrinkage, test and check, reduce short cash and
personal development. (JPSUF, ¶56). It shows that his internal
evaluation was that he fully met expectations and that he had a
competent performance. However, he did not meet the personal
development goal and it was observed that there were
opportunities for improvement regarding training of associates
in the apprehension of shoplifters. (Exhibit 34, Docket No. 75-
42, p. 2).

In May 11, 2006, Plaintiff filed an age discrimination
charge with the Equal Employment Opportunity Commission
("EEOC"). (JPSUF, ¶68). In it, he stated that in June 2005, he

Civil No. 07-1258 (JAG)                                          7

was forced to choose between retirement and a demotion. It further stated that on September 18, 2005 he was demoted to Loss Prevention Manager. (Exhibit 35, Docket No. 75-43). This EEOC charge was dismissed on December 28, 2006. (Exhibit 36, Docket No. 75-44).

His 2006-2007 evaluation assessed the shrinkage, test and check, review of LP data base and improvement of short cash and improvement of associate engagement. (Exhibit 45, Docket No. 75-59). His performance was below expectations in all areas except review of LP data and improvement of short cash where he fully met expectations. Id., p. 2. He also scored below average in the competencies section of the evaluation. After this evaluation, he was placed in a corrective action plan. Plaza Store's manager at the time, Juan A. Leal, stated in the evaluation that Plaintiff needed to work on building trust with managers and associates, provide factual information consistently and work on shrinkage. Id., p. 5. It also stated that previous Regional and District LP visitations have been below average in Fine Jewelry Procedures, receiving and special orders. He was given until mid-year 2007 to show improvement or face termination. Id.

However, before the 90 day period expired, on July 9, 2007, J.C. Penney began an investigation regarding certain allegations made against Plaintiff. According to the unsworn statement of

Civil No. 07-1258 (JAG)                                          8

the Plaza Store's manager at the time, Mr. Juan Leal, a Loss
Prevention Officer named Jesus Garcia told Michael Gonzalez,
another Loss Prevention Officer, that Plaintiff had instructed
him to falsify the entries to the log that recorded the number
of times the anti-theft sensors at the entrance of the store
were activated. (Exhibit 49, Docket No. 75-64, p. 4-5).   The
District Loss Prevention Manager was informed by the second
officer about the allegations and he was instructed to tell Mr.
Leal. Mr. Jesus Garcia then approached Mr. Leal directly and
informed him of what had been allegedly asked of him. Id. Mr.
Garcia also prepared a statement providing details of the
situation. Id.

     On July 11, 2007, Mr. Leal and the Human Resources District
Manager, Ms. Rosa M. Benitez, met with Plaintiff. Id. He denied
any wrongdoing and wrote a statement. That same day he was sent
home without pay while J.C. Penney conducted an investigation.
During the course of the investigation it was determined that he
had engaged in a serious breach of the company's principles of
integrity and the Company Statement of Business Ethics. Id., p.
7. According to Mr. Leal the decision to terminate Plaintiff
came after also considering his prior correctives in file,
issues regarding compliance with policy and prior instances of
inaccurate compliance and that he was in a performance action

Civil No. 07-1258 (JAG)                                                 9

plan but did not show improvement. Id. Plaintiff was terminated
on July 26, 2007. Id.

Before said termination took place, Defendants filed a
Motion to Dismiss. (Docket No. 6). The motion was granted in
part and denied in part and partial Judgment was entered
dismissing all claims by Plaintiff's wife and children. (Docket
No. 26). Plaintiffs appealed and the First Circuit affirmed the
dismissals, except for that of Plaintiff's son, Carlos M.
González Bermúdez, who was a minor at the time the Complaint was
filed. See <u>Gonzalez Figueroa v. J.C. Penny P.R., Inc</u>, 568 F.3d
313 (1st Cir. 2009).

Defendants now posit in their Motion for Summary Judgment
that Plaintiff has failed to establish a prima facie case for
his claims of age discrimination and retaliation under ADEA and
the local statutes and that, since his claim under Art. 1802 is
derivative, it should also be dismissed. It also requests the
dismissal of the demand for front pay.

**STANDARD OF REVIEW**

1. <u>Summary Judgment Standard</u>

"Summary judgment is appropriate when there is no genuine
issue as to any material fact and the moving party is entitled
to judgment as a matter of law based on the pleadings,
depositions, answers to interrogatories, admissions on file, and

any affidavits." Thompson v. Coca-Cola Co., 522 F.3d 168, 175
(1st Cir. 2008) (citing Fed. R. Civ. P. 56(c)). The issue is
"genuine" if it can be resolved in favor of either party.
Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir.
2004). A fact is "material" if it has the potential to change
the outcome of the suit under governing law. Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for
summary judgment bears the burden of showing the absence of a
genuine issue of material fact. See Celotex Corp. v. Catrett,
477 U.S. 317, 323 (1986). "In prospecting for genuine issues of
material fact, we resolve all conflicts and draw all reasonable
inferences in the nonmovant's favor." Vineberg v. Bissonnette,
548 F.3d 50, 56 (1st Cir. 2008).

Although this perspective is favorable to the nonmovant,
once a properly supported motion has been presented before a
Court, the opposing party has the burden of demonstrating that a
trial-worthy issue exists that would warrant this Court's denial
of the motion for summary judgment. Anderson, 477 U.S. at 248.
The opposing party must demonstrate "through submissions of
evidentiary quality, that a trial worthy issue persists."
Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006)
(internal citations omitted). Moreover, on issues "where [the
opposing] party bears the burden of proof, it 'must present

Civil No. 07-1258 (JAG)                                              11

definite, competent evidence' from which a reasonable jury could find in its favor." <u>United States v. Union Bank for Sav. & Inv.(Jordan)</u>, 487 F.3d 8, 17 (1st Cir. 2007) (citing <u>United States v. One Parcel of Real Property</u>, 960 F.2d 200, 204 (1st Cir. 1992)). Hence, summary judgment may be appropriate, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." <u>Forestier Fradera v. Municipality of Mayaguez</u>, 440 F.3d 17, 21 (1st Cir. 2006) (citing <u>Benoit v. Technical Mfg. Corp.</u>, 331 F.3d 166, 173 (1st Cir. 2003)). It is important to note that throughout this process, this Court cannot make credibility determinations, weigh the evidence, and make legitimate inferences from the facts, as they are jury functions, not those of a judge. <u>Anderson</u>, 477 U.S. at 255.

**ANALYSIS**

## 1. Plaintiff's prima facie case under ADEA

In the absence of "smoking gun evidence", a party may nonetheless prove discrimination under ADEA through the burden shifting framework developed by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>Velez v. Thermo King de P.R., Inc.</u>, 585 F.3d 441 (1st Cir. 2009). Plaintiff must show by a preponderance of the evidence that: (1) He or she is over 40 years of age; (2) that his or her job performance was

Civil No. 07-1258 (JAG)                                                12

satisfactory and met the employer's legitimate expectations; (3)
that he or she suffered an adverse employment action and, (4)
that the defendant sought a replacement with roughly equivalent
job qualifications. See Gonzalez v. El Dia, Inc., 304 F.3d 63
(1st Cir. 2002). In its Motion for Summary Judgment J.C. Penney
concedes that Plaintiff meets the first prong, but denies that
he met the second, third and fourth prongs. (Docket No. 75).

    Regarding the second prong, J.C. Penney argues that even if
it acknowledges that according to annual evaluations Plaintiff's
performance was average, his "actual responsibilities were not
[sic] stellarly performed". (Id., p. 10). It also states in its
Reply to Plaintiff's Opposition that there is vast documentary
evidence to contradict Plaintiff's assertion that he met
legitimate job expectations. (J.C. Penney Reply, Docket No. 87,
p. 2). Said documentary evidence consists of an incident report
from 2007 (JPSUF, Exhibit 16), which was after the alleged
demotion, loss prevention visitation reports written by Mr.
Arenas (Id., Exhibits 17-29) and Plaintiff's yearly evaluations
(Id., Exhibits 30, 32, 37, 45, 46). Regarding the visitation
reports, it must be noted that they are internal memoranda where
improvement opportunities were notified to the store's top
management, not performance reviews of Plaintiff work, even if
he was responsible of some areas reviewed in the visits.

Civil No. 07-1258 (JAG)                                            13

Plaintiff correctly indicates that between 2001 and 2005, his performance was regarded in the evaluations as "Fully Met Expectations/Competent Performance". (POMSJ, p. 5). In other words, the evaluations show that he was reviewed positively until the 2006-2007 period. Furthermore, and contrary to what Defendants imply, only meeting job expectations is required under the McDonnell Douglas test, not stellar performance.

The third prong of the test is whether a plaintiff suffered an adverse employment action. Plaintiff avers that he was demoted because his pay was reduced and he had lower bonus eligibility. J.C. Penney does not deny that he had significantly less compensation but allege that they merely reclassified Plaintiff to the correct position according to the tasks he performed. Specifically, they argue that as an Assistant Store Manager, Plaintiff only performed loss prevention tasks and that classifying him as Loss Prevention Manager simply adjusted his job description to what he actually did. (JPSUF, ¶52-54). According to them, this action is consistent with the adaptation of operations in Puerto Rico to those in the continental United States. Id.

Plaintiff retorts that the arguments offered by J.C. Penney to justify their actions are pretexts. To support his assertion he points out that at that time he was allegedly demoted he

Civil No. 07-1258 (JAG)                                    14

performed several tasks that were not Loss Prevention tasks such
as receiving, the money room, part of the office, opening and
closing the store, customer service and distributing work to
associates. (POMSJ, P. 8). He also points out that there were
two other Assistant Store Managers: Ms. De Jesus who is younger
than Plaintiff and who was retained in the position and Mr.
Burgos who had less experience than Plaintiff and who was
offered a promotion. Plaintiff, instead, was given a Hobson's
choice of either retiring or accepting a lower paying job.

    The Court considers that even though Plaintiff has not been
able to produce the "smoking gun" of discrimination in this
case, he has succeeded in demonstrating that there are issues of
material fact regarding the reasons proffered by J.C. Penney to
remove him as Assistant Store Manager and force him to choose
between retirement or a position with less pay and benefits. The
Court finds that the reason proffered by J.C. Penney to classify
him as Loss Prevention Manager (that he only performed loss
prevention tasks) is inconsistent with Plaintiff's performance
reviews. For example, his 2005-2006 Performance Review as Senior
Store Manager indicate that he was evaluated in areas not
related to Loss Prevention, such as total sales, associate
development, store environment, EBIT (Earnings Before Interests
& Taxes). (JPSUF, Exhibit 46). The Court would be hard pressed

Civil No. 07-1258 (JAG)                                          15

to validate an argument that is clearly contradicted by the
record.

Finally, the fourth prong of the burden shifting framework
is whether the employer had continuing need for the services.
Said prong is met here because J.C. Penney continued to need the
services of an Assistant Store Manager. In this case, the only
person retained in the position was Ms. De Jesus who is younger
and had less experience than Plaintiff.

In sum, the Court finds that Plaintiff has successfully
established a prima facie case of age discrimination and that he
has adequately alleged that there are material issue of fact
regarding the reasons proffered by J.C. Penney to classify him
as Loss Prevention Manager.

**2. Plaintiffs claim under P.R. Law 100**

In its Motion for Summary Judgment, J.C. Penney merely
reiterated the arguments it put forth regarding the ADEA
discrimination claim when requesting dismissal of the claim
under local Law 100. The Court has already determined said
arguments are insufficient to warrant summary judgment. (Docket
no. 75, p. 19).

**3. Plaintiff's ADEA retaliation claim**

ADEA's retaliation provision states that it is unlawful for
an employer to discriminate against an employee because said

Civil No. 07-1258 (JAG)                                        16

individual has engaged in a protected activity such as making a
charge, testifying, assisting, or participating in an
investigation, proceeding, or litigation. 29 U.S.C. §623(d).

For a plaintiff to establish a prima facie case of
retaliation, where there is no direct evidence, he or she must
show that: (1) He or she engaged in protected conduct; (2) that
he or she suffered an adverse employment action, and (3) that
there is a causal connection between the protected conduct and
the adverse employment action. <u>Bennett v. Saint-Cobain Corp.</u>,
507 F.3d 23, 32 (1st Cir. 2007).

In its Motion for Summary Judgment, J.C. Penney argues that
even if Plaintiff engaged in protected activities when he filed
the EEOC charges and the complaint in this case, his argument
involves speculation because the real reason for his termination
was a serious ethical violation. Secondly, it argues that even
assuming that he suffered an adverse employment action as a
result of a protected activity (which it denies), the amount of
time which has transpired between the protected activity and the
termination is too long. (JPMSJ, ¶23).

To support this statement, J.C. Penney points out that the
first charge was filed on May 11, 2006 and that Plaintiff was
terminated on July 26, 2007. (Id. ¶ 24). It also points out that
Plaintiffs second charge filed on July 24, 2007, was a mere

Civil No. 07-1258 (JAG)                                          17

attempt to claim retaliation because he was under investigation
for the ethical violation that led to his termination. Id.
Finally, J.C. Penny argues that throughout his career at the
stores he received regular salary increases and favorable
reviews which, according to First Circuit precedent break causal
retaliation claims. (Id., ¶25).

    Plaintiff stated during his deposition that J.C. Penney
began retaliating against him at the end of 2006, and that said
discrimination began because of his complaints to the EEOC and
because he filed the instant case in March 2007. (Exhibit 31,
Docket No. 75-39, p. 92). He further alleges that it took place
when the company started holding him responsible for things that
were out of his control and when he was told he would be placed
under a corrective plan at the beginning of 2007. Id. He was
formally placed under said plan in May 2007. Id., p. 97.
According to his deposition he was to be under the corrective
plan for 90 days and receive an evaluation every 30 days.

    In his opposition to the Motion for Summary Judgment,
Plaintiff argues that there is a causal connection between the
filing of the first charge and the negative evaluation for the
year 2006, and the filing of this lawsuit in March 2007 and his
termination in July of that year. (POMSJ, p. 13). He posits that
Mr. Garcia, who was the actual perpetrator of the alleged

Civil No. 07-1258 (JAG)                                          18

falsification that led to his termination, used him as a
scapegoat and was only suspended for a week. According to
Plaintiff, said action indicates that J.C. Penney gave Plaintiff
a disparate treatment, which under Velez v. Thermo King de P.R.,
Inc., 585 F.3d 441 (1st Cir. 2009), may indicate discriminatory
animus. He sustains that the investigation conducted by J.C.
Penney of the false accusations merely consisted of taking as
true a handful of hearsay statements from employees. (Id., p.
14).

     In Velez v. Thermo King de P.R., Inc., *supra*, the First
Circuit reiterated that the test for disparate treatment in age
discrimination cases is "whether a prudent person, looking
objectively at the incidents, would think them roughly
equivalent and the protagonist similarly situated. While an
exact correlation is not necessary, the proponent must
demonstrate that the cases are fair congeners." Id. citing
Perkins v. Brigham &Women's Hosp., 78 F.3d 747, (1st Cir. 1996).
The Court considers that a prudent person would not think that
Plaintiff and the Loss Prevention Officer who falsified the
documents were in a fairly congenial situation, apart from the
obvious fact that they were involved in the same incident.
Plaintiff, on one hand, was the Loss Prevention Manager, that
is, the member of management in charge of preventing fraud and

Civil No. 07-1258 (JAG)                                                    19

theft and who is held at a higher standard than a first tier
employee, such as Mr. Garcia.

   The Court finds that even though there is significant temporal
proximity between the filing of the complaint in this case and
his termination, causation as required under the third prong has
not been demonstrated. J.C. Penney has submitted strong
documentary evidence supporting the reasons it had to terminate
Plaintiff and the process followed to evaluate the incident.
Plaintiff has not been able to show that there are issues of
material fact regarding the reasons for his termination apart
from alleging he was treated disparately and the conclusory
allegation that he was used as a scapegoat and that hearsay was
used against him.

   Therefore, the Court finds no evidence of disparate treatment
that could lead to the conclusion that retaliation took place
and finds that Plaintiff was not able to establish a causal
connection between the performance of protected activities and
his termination aside from establishing temporal proximity.
Therefore, follows that Plaintiff was not able to establish a
prima facie case of retaliation under ADEA and that summary
judgment dismissing said claim is proper.

**4. Plaintiff's Law 115 retaliation claim**

Civil No. 07-1258 (JAG)                                              20

   Local Law 115 forbids employers from discriminating against
employees for offering written or verbal testimony before
legislative, judicial or administrative fora. P.R. Laws Ann. tit
29 §194a. Employees must establish that a protected activity was
carried out and that termination, threats or discrimination were
suffered. <u>Figueroa v. Alejandro</u>, 597 F.3d 423, 433 (1st Cir.
2010)(citations omitted). Once a plaintiff establishes the
above, an employer must provide a reason for the alleged adverse
employment action and a plaintiff must show it is pretextual.

   Since the parties have essentially reproduced their arguments
regarding the ADEA retaliation claim while discussing the
retaliation claim under the local statute, the Court again finds
that Plaintiff has not been able to defeat J.C. Penney's request
for summary judgment. Therefore, summary judgment dismissing the
Law 115 claim is proper.

   **5. Article 1802 claims**

   The Court is puzzled as to why J.C. Penney requests the
dismissal of the Article 1802 causes of action of Plaintiff's
family members, since there is only one family member,
Plaintiff's son, Carlos M. González Bermudez, whose claim is
still pending before the Court. As the parties may recall, our
decision to dismiss all Article 1802 claims filed by Plaintiff's
family members was substantially confirmed by the First Circuit

Civil No. 07-1258 (JAG)                                    21

in <u>Gonzalez Figueroa v. J.C. Penny P.R., Inc</u>, 568 F.3d 313 (1st

Cir. 2009).

    The extent of J.C. Penney's argument regarding these claims is

that they are contingent upon the ADEA claims and that, since no

employment discrimination took place, dismissal is proper.

Plaintiff argues that, "as the discrimination claims should not

be dismissed, as discussed above, the Article 1802 claims should

also remain in the case". (POMSJ, p. 16).

    Therefore, the Court finds that since the age discrimination

claims will not be dismissed; neither will the Article 1802

claims.

    **6. Front pay**

    J.C. Penney posits that dismissal of the claim for front pay

is proper because Plaintiff stated in his deposition that he was

not seeking reinstatement. (JPMSJ, Exhibit 31, p. 18). Plaintiff

argues that the Court cannot make a decision regarding this

issue on the record as it stands and that the decision must

await trial.

    The First Circuit has held that front pay should not be

awarded unless reinstatement is impracticable or impossible.

<u>Arrieta-Colon v. Wal-Mart P.R., Inc.</u>, 434 F.3d 75, 91 (1st Cir.

2006). A Court has the discretion to deny front pay if a

plaintiff fails to request reinstatement, show impossibility or

Civil No. 07-1258 (JAG)                                              22

impracticability of reinstatement, of inability to work or of
work life expectancy. Id.

   In this case, none of the above have even been alleged or
argued by Plaintiff and, in light of the fact that he has
manifested that he does not want to be reinstated, the Court
dismisses his claim of front pay.

**CONCLUSION**

      For the reasons stated above, the Court **GRANTS** in part and
**DENIES** in part J.C. Penney's Motion for Summary Judgment.
(Docket No. 75). Specifically, the Court grants summary judgment
and dismisses Plaintiff's retaliation claims under ADEA and
local Law 115, as well as his claim for front pay. However, J.C.
Penney's requests for summary judgment regarding Plaintiff's age
discrimination claim under ADEA and local Law 100 and the
remaining claims under Article 1802 are denied.

      IT IS SO ORDERED.

      In San Juan, Puerto Rico, this 29th day of November, 2010.


                                    S/ Jay A. Garcia-Gregory
                                    JAY A. GARCIA-GREGORY
                                    United States District Judge